Next case on call this morning is agenda number 18 case number 106741 the village of Roselle versus the Roselle Police Pension Board. Mr. Carlson you may proceed when you're ready. May it please the court. My name is Keith Carlson. I'm one of the attorneys that represents the Roselle Police Pension Board in this matter. Essentially the issue here is to determine what the meaning of Section 5-3-112A of the Illinois Pension Code means. We assert that it means that surviving spouses, disabled children, minor children, dependent parents receive cost of living adjustments in their survivor pensions. It's important to note as this court has held for a long time that pension statutes are to be liberally construed in favor of the beneficiaries that are to be benefited by those statutes. In this case the beneficiaries are surviving spouses of dead police officers. There are two major issues that we're going to argue over. One is if the statute is ambiguous what happens and if it's unambiguous what happens. As far as ambiguity goes we certainly argue that it is ambiguous in this circumstance. The statute is ambiguous if it's amenable to more than one definition as was stated by this court a couple years ago in Wade versus North Chicago. The Illinois Pension Code never defines the term pension and Illinois courts have never defined the term pension in the context as it is applied in this case. However, in other circumstances where Illinois courts have defined it they certainly have construed the COLAs are inherent in that term. Courts across Illinois have held that while interpreting the Illinois Pension Code a useful guide when Illinois courts have not defined a term or a process is the decisions of federal courts specifically in ERISA. Federal courts are a useful guide of interpreting Illinois law when it is comparable. The term pension is an ambiguous term at best. That's a quote from a Northern District of Illinois case from 1955. It's Heard versus Illinois Bell. Now when interpreting the pension code again we are to look to ERISA for similar provisions. And when dealing with whether or not the term pension or pension benefits includes COLAs almost uniformly the Seventh Circuit has held that inherent in pension benefits are COLAs. In the case of Hickey versus Chicago truck drivers, helpers and warehouse workers the Seventh Circuit wrote, COLA is an essential element of the normal retirement benefit. The COLA ensures that the retirement benefits will not diminish in real value over time. It provides the additional retirement income each month that is necessary to maintain the value of the retirement benefits. Continuing, the Hickey court wrote, the COLA was inseparably tied to the monthly benefit as a means of maintaining the real value of the benefit. It could not, therefore, be said to be ancillary to that benefit. Mr. Carlson? Yes. Keeping with your theme of ambiguity right now, there is something very logical and actually appealing about saying that the spouse should be in the same position as the officer and that would include COLAs. But if indeed the statute is ambiguous and we look through other areas of the pension code where they specifically provide the benefit, it would be, you know, one aid that we could use. And if we look at 114.1, and I admit it applies only to a narrow class of surviving spouses, and in that class it demonstrates that the legislature's intention to not have surviving spouses in that narrow class receive the COLA, how do we formulate all that into our analysis as to what the legislature meant in this instance? Well, Justice Thomas, I think that's an excellent question. 3-114.1d, I think, is the specific portion that you're talking about, and it was addressed in opposing the opponent's brief. I think what they're talking about there is exactly what you said, is a very narrow class of people. But actually I think that it states respectfully the exact opposite of what you're stating, that when the legislature means to exclude cost-of-living adjustments, it specifically will write that, which is exactly what it did in 3-114.1d. So what we're asserting is that if it were to say that, that surviving spouses would not be entitled to cost-of-living adjustments, it would specifically state that. That makes it a better question, because if you look throughout the pension code, the legislature very clearly provides for COLAs for surviving spouses, and I'm sure we're going to hear from opposing counsel that when it intends to provide, it's very easy to put it in there. That would be true, if you were to accept or think of the notion of the pension code that was written as one homogenous unit that was not separately negotiated, argued for, amended, in a totally separate and discreet manner. Article 3, Article 4, and Articles 5 and 6, which is the downstate police and fire, and then Chicago police and fire, have been treated almost as its own discreet section of the pension code. And to try to compare it to teachers' pensions, highway workers' pensions, and other public employee pensions, doesn't seem to really make a lot of sense, because you're kind of comparing apples and oranges. In addition to that, I think that because in certain circumstances the legislature has chosen to specifically exclude cost-of-living adjustments in some circumstances, and more expressly than they may have in this circumstance, grant cost-of-living adjustments, that actually cuts in favor of the notion that it's ambiguous. And then again, we go back to this Court's longstanding tradition of holding that pension statutes are to be liberally construed in favor of pension beneficiaries. Isn't it possible that because of the generous nature of this pension, as I understand it, the surviving spouse gets 100 percent of what the deceased earned, that the legislature didn't intend to include a COLA in that instance? Because that's different than other pensions, many other pensions. Well, Justice Garment, actually I would assert that with regard to the use of the term generous, it's also important to note that police officers and firefighters in Illinois pay a higher percentage than any other municipal employees, except for, I believe, the Chicago Teachers Union employees. So that's also part of the reason that those surviving spouses of police officers are getting benefits that have been paid more for by employees than other municipal or state employees. Does any part of that payment anywhere indicate that it's to support surviving spouses, COLA? The pension code provides for a surviving spouse benefit, so that would be my assertion that it does. It's important, I think, also to go further with that, is that the surviving spouse benefit Let me make sure I understand you, that part of the contribution that the member officer made to the pension board was contributed to preserve a COLA for the spouse? It's a lump sum. I mean, it's a percentage that's devised by the pension scheme that says that each officer will contribute a certain amount. I believe it's 9.1 percent or 9.91 percent. And with that amount, it does not say that a certain amount is for spousal benefits, a certain amount is for dependent children, a certain amount is for handicapped children, a certain amount is for dependent parents. It doesn't break down that way. What it states is that to be able to be entitled to the benefits under the pension statute, that they must contribute that amount. So, no, there is no specific, separate contribution where if you're married, you have to contribute a larger amount. If that was your question, I'm sorry. It was. To follow up on Chief Justice Fitzgerald's question, are there not pension funds that do, or pension plans where the statute does indicate the contribution is for spouses' COLA? I don't know. To tell you the truth, I only work on Article III and Article IV funds, so my knowledge of the teacher's pension fund or the state employee retirement system is relatively limited. Mr. Carlson? Yes. Have you given thought to why the legislature may have excluded COLAs in 114 1D, I think you said, and in this case your presentation that COLA should not be excluded? The benefit of 114.1D is that it was written in 2001, so first it's inapplicable to this case. But the reasoning may have been, and I'm only speculating, I wasn't in the legislature at the time. I'm not familiar with the transcripts of committee reports or anything like that. But my understanding may be that it may be to encourage disabled pensioners to then convert to a traditional retirement pension would be one reason that they may have done that. So I believe that, you know, if you look at the term that the definitions that have been proffered, there was only one definition proffered by the village in this case, and it was picked from the Black's Law Dictionary, and it was the one definition that used the term fixed. However, if you look at the Webster's 2003 edition, it refers to pension as a regular payment. Funk and Wagnalls is a periodical allowance. Black's Law from 1990, which is also the definition that was relied upon in defining the term pension in the In Re, the Marriage of David, which states that a retirement benefit paid regularly, normally monthly, with the amount of such based generally on a length of employment and amount of wages and salary of the pensioner. If the legislature were to want to make this clear, it would have used the term fixed. It would have stated that the sum payable to the pensioner is fixed. It didn't choose to do that. There are many different terms or definitions of the word pension. And again, I don't think that a court in 1955 was being unreasonable when it said, at best, the term pension is ambiguous. Do we need to defer to an agency interpretation here at all? We assert that the agency interpretation you should defer to would be the pension boards. In this case, as well as other Article III cases, pension boards have been empowered to interpret the statute, enforce the statute. One example would be in Sedlock, where pension boards were empowered to determine what the term salary means. Rather than the Department of Financial and Professional Regulation? Correct. And in addition to that, I don't believe that the Department of Financial and Professional Regulation Division of Insurance, or at the time, potentially the Department of Insurance, ever issued a formal advisory opinion in this case. All that we have is a Xerox of a newsletter. We have no idea who wrote that newsletter. We have no idea if it was an attorney. We have no idea what the status was. We know that it was in a Division of Insurance newsletter. However, we do not have anything that indicates that this was a formal advisory opinion, as is thought of under the statute. As such, there should be no deference given to the Division of Insurance's interpretation, as is stated in an unsubstantiated newsletter. If we look at Illinois courts in other contexts, as they've dealt with the term pension, In Re, The Marriage of David, I think provides an excellent insight into how Illinois courts have traditionally dealt with the notion of what the term pension means. The 2nd District in 2006 decided that case. And what happened in that case was that the husband had a pension. The court, in its decree, never stated anything about COLAs. All the divorce decrees stated was 60% of husband's pension earned during the marriage would go to the ex-spouse. Now, the husband argued in that case that the decree did not describe, discuss, or otherwise order that wife was entitled to the subsequent supplemental benefits or any early retirement subsidy or that she would share in any cost of living adjustment made to husband's pension benefits. The court responded to that argument by writing, Obviously, the argument presupposes that these items are not already subsumed within the definition of pension itself. The questions starkly presented, therefore, is what does pension mean? In David, the court held the ordinary meaning of the word pension includes, quote, all benefits that are afforded to a pensioner, including cost of living adjustments. Now, certainly you can't say that the pension board is being unreasonable when it reaches the same interpretation of the term pension as the 2nd District did by saying that inherent in the term pension is cost of living adjustments, which all the cost of living adjustments do is try to maintain the value of a pension. Now, this court held, I believe it was in Jorgensen v. Belogoyevich, that when the governor vetoed and refused to allow sitting judges to have their cost of living adjustments, that that was an unconstitutional diminution of their salaries. We assert that it's no different when you do it to widows, widowers, surviving children, dependent parents, handicapped children. There are a series of public policy arguments that were raised by amicus in this case. There are a series of arguments, obviously, regarding the ambiguity or lack of ambiguity of this statute. We assert in the end that these were benefits that were paid for by these police officers, that police officers do a very, very dangerous job in the state of Illinois as well as other parts of the country, and that while doing those dangerous jobs, these officers should not have in the back of their minds whether or not their families are going to be properly taken care of when they're out doing that dangerous job. As such, I ask that you take that into consideration as well. And the final thing I would like to note is that the Illinois Municipal League had filed an amicus brief in this case that was filled with tons of financial, what we would assert, propaganda. It's important to note, as Chief Justice Fitzgerald noted in the last case, none of that information was ever included in the record. It was never vetted. There has never been a demonstration that any of the financial impact information actually shows that there's a statistically significant financial impact on pension plans anywhere, if the Court were to interpret this. And finally, there is no evidence to show that actuarially Article III and Article IV pension funds are not taking these cost of living adjustments into account. In the end, I truly appreciate your time, and I hope that you find it in our favor. I have one final question. The parties spent a lot of time in interpreting then and arguing what's ambiguous or not. But does the word pension in the phrase, quote, the surviving spouse shall be entitled to the pension to which the police officer was then entitled, refers to the right to the pension or the amount of the pension fixed on the date of his death? We assert that the term pension inherently includes colas, meaning that it is the right to the pension, that it is the amount of money plus the annual 3 percent increase as the practical response. But, Justice Freeman, I think you excellently have framed the issue. Yes, they step into the shoes of that pension recipient, and they continue to be able to maintain the value of that pension. I think a phrase that way doesn't seem to be any ambiguity. It refers to the right rather than the amount. Correct. And that's our alternative argument, certainly, is that even if you were to find this unambiguous, that the traditional interpretation of the term pension is not a fixed sum, rather it is the right to be able to receive a benefit, and that the term benefit is a changing notion based upon the augmentation with the annual 3 percent increase. Fixed at the time of the date of his death. I don't believe that it would be fixed at the time, at the date of his death, because the term then is still not read to be superfluous, even if you do that, because the cost of living adjustments are inherent in the term pension. But, however, let's say after the pensioner dies and the surviving spouse is collecting, let's say that the legislature went back and augmented the benefits to police officers. They would not get that increase unless it were specifically included, would be the one interpretation of the word then, why it wouldn't be included. The second reason that the word then would not be superfluous and would not fix the sum at that time is that Article III pensioners are not entitled to receive cost of living adjustments until they hit the age of 55 or 60 if they're disabled. And so if you had a disabled pensioner die before the age of 60 or before they converted to a regular retirement pension, potentially that may lead to a person not being able to receive cost of living adjustments. In either of those circumstances, it would, again, you would be entitled to the right and that the sum that constitutes the right would still not be fixed and it would still be consistent and not read any of the terms to be superfluous. Thanks. Thank you, counsel. You may proceed. May it please this Honorable Court, Mr. Carlson. My name is Erica Thomas and I'm here today representing the Village of Roselle. I come before the court this morning not advocating for the reduction of benefits for a widow of a police officer, as the appellant suggests, but rather advocating for interpretation of 40 ILCS 557, section 5-3-112A that will ultimately benefit all the participants of the Roselle Police Pension Fund by assuring that the assets of the fund are distributed as intended by the Illinois General Assembly. Although the appellant has urged this court to find that section 3-112A is ambiguous, I would argue that there is no ambiguity and the wording of section 3-112A very clearly awarded survivors of downstate police officers the fixed pension amount that the police officer was receiving at the time of his or her death with no additional cost of living increases. The Illinois General Assembly has demonstrated throughout the pension code that cost of living increases to surviving spouses are awarded by specific statutory language. In the Village's brief, we noted 10 other public pension systems that specifically and unequivocally provide for cost of living increases for surviving spouses. It is notable that not one of these public pension systems provides the surviving spouse 100 percent of the amount that the pensioner had been receiving. Each system provides a pension for a surviving spouse that is reduced by as much as half of the amount that the pensioner had been receiving. Counsel? Yes. Do any of these other pension systems that you're referring to have the same then language, an entitlement language? They do not have the same language. And I would argue to this court that the word then is not necessary because they have enhanced these benefits with cost of living increases. So it's very clear. They've spelled out the benefits. Ms. Thomas? Yes. How do you address Mr. Carlson's comment about 114-1? There's other pension systems, but when you look to the police pension system, the legislature has seen fit at least in a narrow area to specifically exclude COLA benefits. I would assert that the legislature was simply making it clear, crystal clear in this particular case, in the case of 3-114.1 of a disabled surviving spouse, that they are not entitled to cost of living. And I think that should be read in harmony, that the legislature did not intend to award cost of living increases to any survivors, but they wanted to specifically indicate it in 314.1. It's unreasonable to read that the legislature would specifically deny cost of living increases to surviving spouses of presumably the most financially needy pension benefits and then grant them to everyone else. It doesn't make any sense. So I would argue that it was simply clarifying language. Although the appellant argues in its reply brief that the other statutes that I had referred to had to be amended by the legislature to specifically add the cost of living increases, this argument tends to support the village's position that the surviving spouse benefits must be enhanced only with specific language in the statute. Additionally, as Mr. Carlson points out, analysis of this issue cannot be complete without consideration of Articles 4, 5, and 6 of the Illinois Pension Code, which govern downstate, fire, downstate police, or excuse me, downstate fire, Chicago police, and Chicago fire pension funds. Articles 4, 5, and 6 do not contain language granting cost of living increases to surviving spouses, but they do provide 100% survivor pensions. These sections of the pension code are arguably more similar to Article 3 and therefore instructive to this court on the General Assembly's intent concerning cost of living increases for spouses. Now, counsel has made an argument that this court should look to some federal cases, specifically ERISA cases, in defining the term pension. I would argue that, first of all, this court is not bound by those federal cases, and I would also argue that those cases are inapplicable to the facts at issue before this court for a number of reasons. First of all, the Roselle Police Pension Fund is exempt from the ERISA requirements because it is a government plan. There are no analogous provisions in ERISA that deal with cost of living increases for surviving spouse benefits. The Barrington case that counsel refers to in his brief referred to ERISA provisions in federal case law for guidance. However, it only referred to it because it was considering the prudent person standard for pension fund trustees, which the ERISA language is identical to the Illinois language. The Barrington case did not in any way, shape, or form extend this analysis beyond the reasonable person standard. Further, ERISA cases defining pension are not applicable to the case at bar because they are looking at each specific pension plan, the wording of each specific pension plan, to determine what the word pension means with regards to that plan. This is a statutory driven plan that is before the court. It's not an individual plan document. Additionally, none of the cases that are cited by counsel deal with the definition of pension concerning survivor benefits. With regards to the language in 314.1, I would argue that it is significant that the legislature did, in fact, include it in there. I would argue that this demonstrates the legislature very clearly knows how to add this language and discuss these particular issues when it feels the need to do so. The fact that the language is not in 3-112A indicates it's very clear purpose not to grant cost of living benefits. Based upon a review of the entire pension code, it is apparent that the Illinois General Assembly uses specific language to award cost of living increases to surviving spouses. The failure to include this language can only reasonably be interpreted to mean one thing, that Article III does not provide cost of living increases for spouses, survivors. Although the appellant argues that this court should give deference to the board's interpretation, of Section 3-112A, I would remind the court that issues of law in administrative review cases are reviewed de novo. However, if this court is going to defer to any administrative agency's interpretation of Section 3-112A, it should refer to the advisory opinion of the Illinois Department of Financial and Professional Regulation on this exact issue. This agency has been statutorily empowered to render advisory services to the public pension funds on all matters pertaining to their operations. As such, its interpretation of statutory provisions should be given substantial weight by the individual pension funds. However, the board not only failed to give the department's opinion substantial weight, it failed to give it any weight and deliberately ruled to the contrary. Is there anything besides the newsletter that would indicate that's the department's opinion? Actually, yes. There was a case, I believe it's a 2003 case, Sola v. Roselle Police Pension Fund. This exact issue came before the Second District Appellate Court. As you review the facts of the Sola case, you will note that the issue in Sola arose because the Department of Insurance was conducting an audit on the Roselle Police Pension Fund at that time and determined that it improperly was providing cost-of-living increases to surviving spouses, at which time the village attempted to cease those cost-of-living increases. The department made it very clear to the Roselle Police Pension Fund at that time that it was of the opinion that cost-of-living increases, that surviving spouses were not entitled to cost-of-living increases. They've been through litigation before, and at that time the Department of Insurance gave a specific opinion to the Roselle Police Pension Fund. They have since issued the siren under its letterhead and under the director's name, and the siren is identical to the opinion that it gave the fund back in 2003. Although certainly Article III pension funds have interpretive authority, the Public Pension Division's opinion on this exact issue should have been given deference by the Board. Further, if the Court allows each Article III and IV pension fund to disregard an opinion from an agency charged with advising pension funds, there will be a wide-ranging inconsistency across the over 600 pension funds in this state. To be clear, this Court is not bound by the Department's interpretation of Section 3-112A, but it may be given persuasive weight and is another factor that should be considered in this case, and it certainly should have been considered by the Board. Ms. Thomas? Yes. The Board, I think, seems to argue that because the Legislature knows how to exclude COLA when it wants to, based upon the language in 114-1.1, and you're arguing that the Legislature knows how to include COLA when it intends to, what factors can we take into consideration to determine what the Legislature meant in this case? If this Court is to interpret the language of Section 3-112A as the appellant argues, there would have been no need to include the word then in that phrase. If you omit the word then, it would have read exactly how the appellant wants, is urging this Court to apply it. You cannot just, and I believe it's well-established case law, that the Legislature includes each and every word for a particular purpose, and so to read it as the appellant suggests and to ignore the word then is not giving credence to this well-established point of law. Although the board argued then meant something different at the appellate court than I think it's arguing now. It's concentrating now on the word pension. Yes, it is, Your Honor. Which I did present some waiver argument in our brief. I'm not going to spend much time on it here because I'm aware that this Court can, regardless of the waiver at the lower levels, can certainly choose to consider the argument. However, you're right. The board did, in fact, at both the trial court and at the appellate level, argue that the word then was the key word in this phraseology. However, in its brief before this Court, it's now saying, okay, well, we'll accept the definition of the word then, as the Second District has suggested. But now it's the term pension. The Second District never had an opportunity to review any of this argument about the word pension. And there are no Illinois cases that define the word pension. And as I've indicated before, the ERISA cases that the appellant has suggested are not applicable. They're federal cases. They're concerning individual specific plan documents that are not anywhere near comparable to the statutory animal that you have before you. So with regards to the definition of pension then, we're left with a definition, or the common use, or the commonly accepted definition of the word pension. And to look in the Black's Law Dictionary, and quite frankly, although counsel cited a whole bunch of dictionary definitions in its brief, it went and looked at some of those definitions. Most of the definitions indicate that it is a fixed monthly or regularly paid benefit. The term fixed is frequently found in the common dictionary definition of that term. And that is where the village is coming from. It's a fixed benefit. It's fixed at the time of the death. I'm not sure you answered Justice Carmeier's question, so I'm going to give it another go. I think that his question assumes an ambiguity. And the answer was there's no ambiguity. And I understand that that's your position. There's no ambiguity. You look at the plain reading of the statute. But if there is an ambiguity and we go to other statutory construction aids, I thought the question was how do we determine between in 114 there's an indication specifically that there is no COLA as it relates to the provision that we're dealing with here versus in the other pension statutes there is indication of when a COLA is provided. How do we look at those two? Now, opposing counsel says, well, there's a difference between the pensions. So 114, you look at that and say, well, if they meant it in the provision at issue here, they would have said the same thing they said in 114. They would have said no COLA. I would argue the easy way to approach that is the most simple common sense way. When the legislature wants to enhance a benefit, it will certainly state that. Now, this 314.1 is a bit of a different animal than what we're dealing with, because it's concerning disability cost of living increases to a line of duty disability police officer. Now, that officer would not normally be entitled to a cost of living increase. The officer has to make a specific application saying that he is not able to generate any other source of income, among other things. So I would argue that the legislature is honed in and is giving, before he or she is entitled to, is giving them a cost of living increase ahead of time. And for that particular reason, it wanted to make crystal clear that although we're giving you this extra benefit, it doesn't extend to your spouse. Now, as I indicated, these are presumably the most financially needy persons. It does not make any common sense to read that these particular persons are the most financially needy. These particular spouses would not be entitled to cost of living increases, whereas all of the other spouses should be entitled to cost of living increases. Like I said, it was a specific, defined area that the legislature wanted to make crystal clear. It's not, in my opinion, it's not to be read in conjunction with 3-112A that, well, everybody else gets them, but we're just going to make sure that these guys don't. That's absolutely not how it should be read. It was just the legislature making crystal clear they are not entitled to the cost of living increases. And you said that 3-114 provided for cost of living increases early? That is correct. Yes, disability pension recipients do not receive cost of living increases until they translate that pension into a retirement pension or they qualify under this particular section. Did Mr. Gerke reach age 60? Mr. Gerke did, in fact, reach age 60, and he translated into a retirement pension. So at the time of his death, was he then entitled to a monthly pension that included cost of living increases? Yes, he was. Yes, he was. And I believe he received them for approximately nine years before his death. From a public policy standpoint, the village's interpretation of Section 3-112A makes sense. It's easy to be sympathetic to the surviving spouses of police officers. However, it cannot be ignored that Article 3 provides significant pension benefits to survivors of police officers in that they receive 100 percent of the pension that their deceased spouse had been receiving. Other than Articles 4, 5, and 6, no other surviving spouses of public employees in Illinois receive 100 percent of the pensioner's benefit. If there are no further... I do have a question. The officer here did not apply for the early COLA each year prior to his age 60, did he, under 114.1? Not that I'm aware of, no. You have it in your argument someplace, because I have it in a footnote of mine. But does the record reflect that? I don't believe the record reflects that. I believe that he simply converted his disability pension to a retirement pension when he reached age 60. Thank you, Ms. Thomas. Mr. Carlson. Mr. Carlson, Ms. Thomas has argued a reason as to why 114.1 should not apply, or we should not consider the language there where the legislature specifically said no COLAs would apply, and therefore we should look at other pension funds where the legislature knew how to include the COLA, they did so. How would you reply to that? Simply that in the exact same article when they meant to exclude COLAs, they said so. And that if there was no need to clarify, as opposing counsel argued, then, you know, if she felt that there's a need to clarify, I think if the village feels that way, then it also implies that there's an ambiguity there. 114.1 sets forth a specific way for an officer to make an application and to show that, I think, and that's an annual application. So he has to make the application, he has to certify that he is not employed anyplace else. Correct. Okay, could there be an argument that that's what it's directed at, that type of thing, because there's a specific requirement for the officer to do something actively, to seek that, that that's no longer available because the facts are different? We don't have, you have a spouse now as opposed to a disabled officer? Correct. 3-114.1, I believe also was enacted in 2001, so I don't think that Officer Gerke would have been eligible to apply under that, first of all. Second, absolutely, I think that you hit the nail right on the head there when you state that this is a different benefit than we are even talking about here. It is not a normal retirement benefit. It is a benefit that was changed to help disabled officers before they attain the age of 60, which is the other way that officers can start getting a cost of living adjustment, as if they are on a traditional disability pension, go to the age of 60, as opposed to 55 under a traditional retirement pension. In those circumstances, also to read the statute as the village proposes that you do, it states that you must conservatively construe the pension code against beneficiaries, asking for a vast change in what this Court's longstanding position regarding that is, is that pension codes are to be liberally construed in the favor of beneficiaries. And in this circumstance, when the legislature chose to address COLAs in Article III, when it did not want a surviving spouse to receive a benefit, it expressly stated as such. Mr. Carlson, and I'm going to phrase this a little bit different than Ms. Thomas argued it really, but with respect to 114, one of the other aids of statutory construction is that this Court can't come up with an interpretation that would result in an absurdity. And although she didn't specifically reference that, she did say, why would the legislature specifically not allow COLAs for the disabled, the ones that probably are in most need of it? How do you address that argument? Again, because you're dealing with a whole different class of people. You're dealing with a class of people that are receiving cost of living adjustments before traditionally they had been able to, I believe in 2001 when it was changed. So my assertion would be that that would be maybe, again, I don't have the legislative history. Potentially it's because they're receiving them early. Potentially it's because it's in a way of actuarially dealing with those problems. It may also be that statistically their spouses may be younger and more likely to return to a workforce than the spouses who are from a more traditional pension plan, as is envisioned in 3-112. If we look at the village's argument, in essence what they're saying is that you freeze the sum of benefits as of the date of death. Inherent in that argument is a concession, a logical concession, that the village concedes that within the term pension is included the term COLA. Because there's no way that you can grant the COLAs that Officer Gerke had earned the nine previous years and freeze it at that time unless the term pension includes COLA. That's the only way that that can occur. Otherwise the village would have to argue that we're going to have to give the widow, Ms. Gerke, a reduction in benefits, which was the very first thing the village noted when it got up in front of you. They're not asking for a reduction in benefits. They believe that it's a freeze, which means that inherent is in the term pension comes COLAs. So now we're back to arguing about what the word then is. And from the beginning we've stated that the officer's widow or widower steps into the shoes of their departed spouse. Now, with regard to the word then, the word then is not read to be superfluous if you interpret in the manner that the board asserts that you should. Again, if the officer had not attained the age of 55 on a traditional pension, retirement pension, or the age of 60, at that point they did not have a vested right to a cost of living adjustment. So if the officer who was retired died before attaining that age, before they were entitled to a cost of living adjustment, at that point the spouse may not be entitled to one. Meaning that the word then still means something. In addition to that, if there were an augmentation of retirement benefits that post-date the survivor's pension, those augmentations may not take effect unless specifically addressed by the legislature when those augmentations were implemented. Again, both of those interpretations lead to a liberal construction in favor of the beneficiary, make the word then still have actual meaning, and again is consistent with both the village and our contention, that the word pension includes COLAs. As Justice Freeman framed the issue, we are talking about the benefit, not some fixed sum of money. That cost of living adjustments are there to allow people to maintain the value of their pension, to be able to adjust to the rigors of a varying economy, and that that's essential to be able to deal with it. Now, in some of the village's briefs, as well as I think in some of the conversation today, we talked about how the surviving spouses receive 100%. And I think in the briefs the village actually states, well, you know, the only thing that really makes anything cheaper are movie tickets and groceries. In the end, the cost of living is not cut in half. Most of those costs will still be included. On page 9 of your reply brief, entitled Section 3.14.1D, you make the statement that that section does not provide guidance as to legislative intent for whether surviving spouses of deceased police officers who retired on disability are entitled to COLAs. You're taking a different position at this time. What I'm saying is that if you do find 3.114.1, 3-114.1 does provide some sort of insight, then it should definitely be read the exact opposite of what they're asserting. I think that if you, the 3-112, what we're talking about is a totally different set of benefits. But if you are convinced that you need to look at external, outside of sections, outside of 3-112 for additional aid, if you do turn to 3-114.1, it demonstrates that the legislature, when it means to read out COLAs, explicitly will say so. Now, with regard to the ---- So just to follow up, at the time of this officer's death, was he entitled to benefits under 3-114 or under the 3-111 scheme? 1-111, I believe. He had converted to a traditional retirement pension. I think to address now some of the concerns that the villages stated about ERISA, it first states that the pension plan, in this case the Roselle Police Pension Board, is not governed by ERISA. Well, neither was Barrington, and they still thought that ERISA was pretty good authority to use as a guide when Illinois courts had not decided. Now, in addition to that, the village argues that there's no provision for COLAs written into ERISA. Well, there's no provision for COLA in this particular section other than the word pension. And when interpreting the term pension or pension benefits under ERISA, courts uniformly, in the Seventh Circuit at least, held that that inherently includes cost of living adjustments. Do any of those cases involve a surviving spouse? No. But it does involve the definition of the term pension. And, again, I think this is very similar to in re the marriage of David, where it states that inherent in that term is pension, that it's not ancillary. It's subsumed within it, that when you use the term pension, you're not talking about a fixed sum of money. Rather, you're talking about a benefit. Mr. Carlson, I'm going to read just a paragraph from the appellate court decision, going back to this 114 issue. Section 114 specifically addresses cost of living increases for surviving spouses of line-of-duty disability pensioners and exemplifies the intent of the legislature to fix the retirement benefit to those received at the time of the officer's death. 114 states, quote, if a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to his or her survivors in the sequence provided in Section 3-112. Now, they use that to say, and this is their last line of this paragraph, by referring to Section 3-112, it is clear that the survivor continues to receive the line-of-duty disability pension the officer received at the time of his or her death. They seem to be saying since there's a reference to 112 and since 114 specifically excludes COLA benefits, that it's consistent to indicate that 112 must not include COLA benefits, otherwise there would never have been a reference in 114, which doesn't include COLA benefits, to 112. How do you address that? May I answer? I'm out of time. You may answer. Thank you. Quickly, the way that I read that is that, for lack of a better term, it's swimming upstream. 3-112 does not incorporate 3-114.1. 3-114.1 makes reference to 3-112. So benefits paid under 3-112 are within 3-112. They do not incorporate anywhere 3-114.1. What it does say is that if you get benefits from 3-114.1, you will be paid the same as 3-112. However, then you'll incorporate D, which states that survivors will not get cost-of-living adjustments. But to read it to say that that then permeates the rest of Article 3, just because there happens to be a reference, I think, is, again, swimming upstream, respectfully. Thank you, Mr. Chairman. Thank you. Case number 106741.